## HENRY DOLESE v. STATE.

No. A-3818.   Opinion Filed Feb. 17, 1923.
(212 Pac. 610.)

(Syllabus.)

1. **Highways—Legal Highway not Established by Mere Order for Survey and Subsequent Approval Thereof by County Commissioners.** A mere order of the county commissioners directing the county surveyor to make a survey of a road and their subsequent approval of the survey so made, without any compliance with the statutes authorizing the taking of land for road purposes and without any effort to compensate the owner of land sought to be taken, in no sense establishes a legal highway.

2. **Same—Insufficient Evidence to Convict of Obstructing Legal Highway.** Where the accused erected houses on private land for private use at a place where they obstructed a road, but there is no evidence tending to show the establishment of a legal highway at that place, either by authority of law or by prescription, the accused should be acquitted of a charge of obstructing a public highway, based on section 2226, Comp. St. 1921.

Appeal from District Court, Murray County; F. B. Swank, Judge.

Henry Dolese was convicted of obstructing a public highway, and he appeals. Reversed.

Wilson, Tomerlin & Threlkeld, for plaintiff in error.

S. P. Freeling, Atty. Gen., and E. L. Fulton, Asst. Atty. Gen., for the State.

BESSEY, J.   Henry Dolese, plaintiff in error, was on April 6, 1920, found guilty of the offense of obstructing a

public highway, contrary to the provisions of section 2226, Comp. Statutes 1921. His punishment was assessed at a fine of $1. From this judgment he appeals. In this opinion the plaintiff in error will be referred to as the defendant.

On May 23, 1918, the defendant was tried before a justice of the peace in Murray county, upon complaint in which he was charged with having knowingly and willfully obstructed, and caused to be obstructed, a certain highway in said county, by placing and causing to be placed in and on said highway four certain houses. The justice of the peace, without the intervention of a jury, found the defendant guilty as charged, and assessed a fine against him of $25 and costs. From this judgment defendant appealed to the district court. The case on appeal was tried in the district court, with the result above stated.

The provisions of section 2226, Comp. Stat. 1921, under which section this prosecution was instituted, are as follows:

"Any person who shall knowingly and willfully obstruct or plow up, or cause to be obstructed or plowed up, any public highway or public street of any town, except by order of the road supervisors for the purpose of working the same, or injure any bridge on the public highway, shall be deemed guilty of a misdemeanor, and upon conviction shall be punished by a fine not exceeding one hundred dollars, and shall be liable for all damages to person or property by reason of the same."

The houses here in question were constructed by Dolese Bros. Company, a corporation, upon land owned by Peter Dolese, who had leased the land to the company. The construction of the houses was done under the supervision of Henry Dolese, representing the corporation. Dolese Bros. Company owned and operated a quarry near the road in controversy and near a switch on the Santa Fe Railroad.

J. W. King, the county surveyor, testified that he knew the location of the road in controversy, and that it had been laid out by him as a public road; that he made the survey in September, 1912; that the road was 33 feet wide, according to his survey. On cross-examination he said that the road was not along any section line, and that it was south of the 10-acre line; that he did not know whether any action was taken by the board of county commissioners to acquire a right of way from the owner by purchase or by condemnation. The witness then read from his field notes, and his testimony continues as follows:

"Q. You say this road was 30 feet south of the 10-acre line there? A. I think it was 30 feet wide—maybe 30 steps—I don't remember.

"Q. Well, have you anything there that will tell us, Mr. King? A. No, sir.

"Q. You don't know whether it was 30 feet or 30 steps? A. No, sir; it wasn't my business to make that record.

"Q. This isn't on the section line? A. Oh, I know it ain't.

"Q. It isn't on the half section line? A. No, sir. * * *

"Q. How did you get this road? Did the commissioners put up anything for it? A. No; we didn't pay anybody, but it was a road to go with, and the only road I ever saw to get to this switch and to Ed Cleveland's store."

It appears elsewhere in the testimony that the land prior to statehood belonged to the Choctaw and Chickasaw Tribes of Indians, with paramount title in the United States, and that Dorset Carter had owned the land before it was sold to Dolese. It appears from the testimony of a number of witnesses and a plat attached to and made a part of the record that there were a number of meandering roads and trails in this immediate vicinity, leading in various directions; that this

particular road in controversy was partly in a creek bed, passing over boulders and benches of rock, and a portion of the way was on the creek bank, next to hills and projecting boulders; that at one time there had been a store near the railway switch, but that floods had carried it away; that the Santa Fe switch near by was not a regular station, and that there were other roads leading to this switch.

The records of the county surveyor did not show the distance of this road 'from any other established surveyor's line, and the proof of the location of the road, as shown by the survey, was indefinite; it was shown that the land previous to this survey belonged to and was in the possession of Dolese Bros. and that no condemnation proceedings had been had to condemn any of the land for highway purposes; that these four houses had been erected for the use of the employes at the quarry. The evidence is conflicting as to whether or not this particular part of the road had been in general use by the public in years previous; all agreed that it was traveled but little at any time.

There is no contention on the part of the state that the statutes relating to the obtaining of a right of way for a public highway and compensating the owner of the land for such right of way had been complied with. For this reason the Attorney General has confessed error. There is no showing that this was indeed a public highway, either by reason of its being acquired from the owner, as the law directs, or by prescription. A mere order by the county commissioners to make a survey of a road and the subsequent approval of the survey, without any effort to compensate the owner of the land sought to be taken, is in no sense a legal establishment of a public highway. In the case of Dudley v. Meggs, 54 Okla. 65, 153 Pac. 1121, it was held:

"While the county commissioners made an order opening up the section line between plaintiff's lands as a public highway prior to the time this controversy arose, yet the order was ineffective for the reason that they failed to comply with the statutory requirements of first obtaining the right of way either by amicable settlement or by condemnation proceedings. Section 7552, Rev. Laws 1910."

See, also, Arthur v. Board of County Commissioners, 43 Okla. 174, 141 Pac. 1.

The evidence indicates that there was no well-defined roadway at the place here in controversy, and there was no road whatever there at a period prior to 10 or 11 years before the houses were built, and that the land in question was Indian or public land until the year 1911. To establish a right of way by prescription there must be a user by the general public under a claim of right, adverse to the occupancy of the owner, of some particular or defined way or track, uninterruptedly, without substantial change, for a period of time necessary to bar an action for the recovery of the land (in this state, 15 years). 9 R. C. L. 771, Easements, §§ 32-36; 13 R. C. L. 38, 39; Gihris v. Fuhrman, 68 Neb. 325, 94 N. W. 133.

A public road cannot be established by prescription or limitation while the land over which the road runs belongs to the United States. Smith v. Smith, 34 Kan. 293, 8 Pac. 385. And in the opinion it is stated that a public road cannot be established by prescription or limitation while the land over which the road runs is unimproved and unoccupied prairie land over which the public may travel at their pleasure. McKay v. Town of Reading, 184 Mass. 140, 68 N. E. 43.

The judgment of the trial court is reversed.

MATSON, P. J., and DOYLE, J., concur.